UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re USA COMMERCIAL MORTGAGE CO., <br><br>  Debtor. <br><br> USACM LIQUIDATING TRUST, <br><br>  Plaintiff, <br><br>  vs. <br><br> COMPASS USA SPE, LLC et al., <br><br>  Defendants. | Case No. 2:14-cv-00455-RCJ-PAL <br> Adv. No. 08-ap-01066-LBR <br> Bankr. No. 06-bk-10725-LBR <br><br> **ORDER** |

The Bankruptcy Court has recommended withdrawal of the reference in this post-judgment adversary proceeding. No party has timely objected. For the reasons given herein, the Court withdraws and stays the proceeding.

**I.    FACTS AND PROCEDURAL HISTORY**

In February 2008, USACM Liquidating Trust ("USACMLT") brought a core adversary proceeding in this district based on the consolidated USA Commercial Mortgage Co. ("USACM") bankruptcy case against, *inter alia*, Republic Title of Texas, Inc. ("RTT"), seeking an order that RTT turn over to USACMLT a total of $2,153,000 to which it was allegedly entitled under two escrow agreements as successor to the rights of Debtor USACM. (*See* Adv.

Compl., ECF No. 1 in Adv. No. 08-ap-1066). USACMLT also asked the Bankruptcy Court for certain relief against Compass USA SPE, LLC and Compass Partners, LLC (collectively, "Compass"). (*See id.*).

In September 2009, the Bankruptcy Court permitted Debt Acquisition Co. of America V, LLC ("DACA V") to intervene, file a complaint in intervention, and substitute itself as Plaintiff in place of USACMLT. (*See* Order, ECF No. 67 in Adv. No. 08-ap-1066). The court noted that once DACA V filed a complaint in intervention, that pleading would be the "sole extant complaint" in the adversary proceeding. (*See id.*). DACA V filed the Complaint in Intervention ("CI") later that month; the Court will refer to the CI as the Amended Complaint ("AC"), because DACA V has been substituted as the Plaintiff, not merely permitted to intervene, because the pleading is entered as an "Amended Complaint" in the electronic docket, and because the AC is the sole operative complaint. (*See* Am. Compl., ECF No. 69 in Adv. No. 08-ap-1066). In the AC, DACA V sought a money judgment against Compass in the amount of $476,677.92 plus interest, turnover of a $237,023.29 check held by USACM LT otherwise payable to Compass, and a declaratory judgment that any attorney's lien of Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") against the check was inferior to DACA V's rights to the check. (*See id.*). When Compass defaulted and Milbank stipulated to split the check with DACA V, the Bankruptcy Court entered judgment, accordingly. (*See* J., ECF No. 124 in Adv. No. 08-ap-1066).

In August 2013, the Clerk of the Bankruptcy Court issued a writ of execution (the "Writ") to the U.S. Marshal to execute on DACA V's judgment in the amount of $422,120.54. (*See* Writ Exec., ECF No. 128 in Adv. No. 08-ap-1066). In January 2014, Platinum Financial Trust, LLC ("PFT"), to whom DACA V has assigned its judgment in May 2013, applied to the

Bankruptcy Court for a judgment against Donna Cangelosi and Margarita Annex SPE for failing to comply with writs of garnishment. (*See* Appl., ECF No. 133 in Adv. No. 08-ap-1066).  PFT asked the Bankruptcy Court to reopen the adversary proceeding for post-judgment proceedings under Bankruptcy Rules 7069 and 7070. (*See* Mot., ECF No. 134 in Adv. No. 08-ap-1066).  The Bankruptcy Court granted the motion. (*See* Order, ECF No. 135 in Adv. No. 08-ap-1066).  The Bankruptcy Court then issued an order *sua sponte* recommending withdrawal of the reference, which is now pending before the Court.

## II.     LEGAL STANDARDS

The Supreme Court has ruled that a bankruptcy court—the judges of which are not afforded the protections of life tenure and irreducible salary given to judges under Article III of the Constitution—cannot enter final judgments on matters traditionally decided by Article III judges, such as contract disputes. *See Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004) (citing *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U .S. 50 (1982)). Congress amended the Bankruptcy Code to conform to this ruling, distinguishing "core" bankruptcy proceedings from "non-core" proceedings. *Id.*  Congress has enumerated what it considers to be core proceedings, *see id.* (citing 11 U.S.C. § 157(b)(2)), but it has not enumerated non-core proceedings, *see id.*  "Non-core" proceedings are those that "do not depend on the Bankruptcy Code for their existence and ... could proceed in another court." *Id.* (citing *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997)).

A bankruptcy court may hear and finally determine bankruptcy cases under Title 11 and proceedings arising under Title 11 or arising in a case under Title 11. *See* 11 U.S.C. § 157(b)(1). A bankruptcy court may hear a non-core proceeding but must submit proposed findings of fact and conclusions of law to the district court for final determination de novo. *Id.* § 157(c)(1).  The

Ninth Circuit has adopted the Fifth Circuit's reasoning in distinguishing three types of proceedings: (1) those "arising under" Title 11; (2) those "arising in" a case under Title 11; and (3) those "related to" a case under Title 11, which are the three categories of cases over which district courts have subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b):

> 28 U.S.C. § 157(b) defines core proceedings as ones "arising under title 11, or arising in a case under title 11," and gives a nonexhaustive list of types of core proceedings. "Arising under" and "arising in" are terms of art. They are two of the three categories of cases over which district courts have jurisdiction under 28 U.S.C. § 1334(b). The third category includes cases "related to" a case under title 11. As the Fifth Circuit has explained,
>
>> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11 . . . . The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.
>
> The court concluded: "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but . . . it is an 'otherwise related' or non-core proceeding."

*In re Eastport Assocs.*, 935 F.2d 1071, 1076–77 (9th Cir. 1991) (citations omitted) (quoting *In re Wood*, 825 F.2d 90, 96–97 (5th Cir. 1987) (footnotes omitted)).

Upon motion or *sua sponte*, a district court may withdraw, in whole or in part, any case or proceeding under § 157. 11 U.S.C. § 157(d). A district court must upon timely motion withdraw a proceeding if it determines "that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce ." *Id.* The party moving for withdrawal has the burden of persuasion. *See In re First Alliance Mortg. Co.*, 282 B.R. 894, 902 (C.D.Cal. 2001).

Although a bankruptcy court may not finally determine non-Title 11 issues, the presence of such an issue does not mandate withdrawal of the reference. *In re Vicars Ins. Agency*, 96 F.3d

949, 953 (7th Cir. 1996). Rather, withdrawal is mandatory "in cases requiring material consideration of non-bankruptcy federal law." *Sec. Farms*, 124 F.3d at 1008. Put differently, "mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *Id.* at 954. Permissive withdrawal is allowed, however, "for cause shown," 11 U.S.C. § 157(d), which a district court determines by considering "the efficient use of judicial resources (which is enhanced when non-core issues predominate), delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008.

### III.   ANALYSIS

The Bankruptcy Court noted that the garnishees had filed an interpleader complaint in this Court (previously pending before Judge Gordon, but since transferred to this Court) as to funds sought to be garnished and reasoned that withdrawal of the reference would be appropriate because the parties will be litigating over the same funds in the present adversary proceeding and in the interpleader action. Both the efficient use of judicial resources and the avoidance of inconsistent rulings counseled in favor of withdrawal. The Court agrees. The Court will therefore grant the motion to withdraw the reference and stay the case pending the outcome of the interpleader action. The interpleader device is the more efficient method by which to resolve the rights of all parties to the disputed funds. Once the Plaintiff in Interpleader deposits the funds and is dismissed, the garnishment issue will become moot. On the other hand, an earlier judgment against the garnishees in the present action could leave them facing rival claims to the same common funds from other Defendants in Interpleader.

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Withdraw the Reference (ECF No. 1) is GRANTED.

IT IS FURTHER ORDERED that the case is STAYED.

IT IS SO ORDERED.

Dated this 28th day of May, 2014.

_____
ROBERT C. JONES
United States District Judge